The Court,
however, is pleased to consider-our right, if any exist, as arising on a contract of Sale of our claim on Cuvillier, of which the notes ©f the plaintiffs, were the price,
He$S-, weadra.it the pbwer of receding exists, if really the intention of the parties was that the perfection of the contract should depend from the Notarial apt. Otherwise, it has been shewn this, power does not exist. Now, we contend there is po evidence of any such, intention. JEv.en, if *517 there was, still the faculty of receding ceased, from the moment the rights of the defendant on St. Amand were released. The thing was no , . . . longer entire and the plamtms could not recede without doing a material injury to the defendant. This the law iorbids. '
“The contract of annuity,’’says Pothkr,“ not feeing perfect, as long as the money, which is the price of the annuity remains with the' nritary, it follows that he, who has furnished it, may alter his mind and resume it, as long as the thing ⅛ entire, and the party, who Sells the annuity receives thereby no prejudice. He who resumes his cash is bound, in this case, to nothing else, but the payment of the charges or fees of the notary or to reimburse them , to the other party, if he has paid them. -
“But if the thing be nq longer entire, 'for example, if you have granted me jan annuity, either by a notarial act, or one under your private signature, of one hundred pistoles a year, for the price of twenty thousand livres, which you promised to invest in a tract of land 3-011 were bargaining for, and I deposited the money in the hands of a third person, until this purchase was completed : altho’. the money be not yet paid, and consequently the contract of annuity has not received its perfection, yet, if you have already bargained for the land, I shall' be bound to. de. liver you the money, in order to enable you to
*518 Pay f°r the land. This obligation does n«>t aeisfc properly out of the incipient, contract* which intervened between us : as it did not mature: , into a periect contract* it cannot; per se produce. (Jj;>]j^a^Gn> Mine arises from this rule of natural equity, nemo potest mutate consilium' m oIterius ' injuriam. X 76,. , § ⅛ Reg. J. Altho’ die contract,, which intervened between us„ has not yet received its perfection,, yet,.as I Liaver iuduced you to bargairt for the land,, equity forbid» I should disable you from complying with it* by withholding the money, on which I induced you, to rely,
“Likewise,, if,, where I altered my mind, and resumed my money, you had made no bargain, but have been, at some ex pence towards, one, I shall be bound to indemnify you.” Con-trátele Rente 76, 74, ño. 65.
A more parallel case could not be adduced. Wlnt— ever might have been the plaintiffs’ right of receding frdm their contract, after tlie defendant had, foregone his claim on ⅜. Amand’s property, the: plaintiffs could not without indemnifying him,, refuse, to, carry, their’ bargain into full effect.
, SfrakiNg of the sacrifice, thus made by the; release of St. Amaral, die Court asks, ante 351, , V why was he. Desse or Brognier, so forward ⅛ 4‘executing what was not yet an obligation oa,- “ lúa part ?⅛ O.ur answer is in the statement. aB *519 fecits, ants 332, '“CuviUkT and Smilié pressed the “mease and it was executed, on the assurance that 4‘Soulié gave, the matter was concluded and “payment was secured by the deposit pf the “ notes.” We may emphatically say because the plaintiffs pressed us. For we have shewn Soulié was their agent. Yet, the judgment deprives us of the very note of Soulié him seif, which lie thus induced us to consider as part of the security, on which he solicited us to part with, our right. The Court may say, in spite of the law produced, that he was not the plaintiffs’ agent and could not bind them : but considerable ingenuity roust be exercised, before, we do not say a good, v, but plausible ground may be shewn' them, on which the Court may say that his note was not virtually pledged, and ought to be restored.
The Court, in their j udgmenterroneously charge Brogmer with having “refused to sign the act as '“•it was and signifying his intention to have the “ clause inserted.”
Brogstie» never did refuse to sign the act as it was, or to sign it in any manner. He neversignn fn d any intenlim to have any clause inserted. The party of the statement on record which corresponds with this part of that of the Court is to be found i,n the deposition of de Armas. See his depósi-|jon, ante 337, 338 and 339. ..
Li i the Court observe that Brognier did not* *520 ¡even g-ive the reference the Countenance of his * . signature or parciphe, without which the Court knows such a reference was a ntillity ; with-it,- it wousl have bound Brogmer but no one else. ''' ,
The defendant has to complain that, while the Court casts an unfavourable shade on his conduct* unjustified by any thing in the record,^ it throws a iavoii rabie gloss on that of the appellees which is alike uncountenanced bv any thing in the record.
The Court attributes the recantation of three of the assignees to the information, which it says was given them of Brognier’s refusal to sign. “On discovering this alteration (the reference in “the margin) and being informed of Brognier's “ refusal to sign, three, of the lour who had signed “it, blotted out their signatures.”
i v no part of the record, is it stated that Bro. gnier refused to sign, or that any person was informed of this pretended refusal. Bianque gives his reasons : he does not 'pretend that Brognier revised, to sign, he only says that “he was master “■../'his signature as long as the other party had f‘ he ■ signed.' Clarke gave no reason : Soulié dis-p;r only, ‘‘on his right to do what Clarke and Eknquc had done.”
Let the Court correct their own statement by the'record in these particulars and then ask them* selves what part of it authorises them to say *521 “that Brognier by his recantation released the other “ parties from their engagement ?” Or that he either made or caused to be made any ‘•‘"alteration" or uchange" in the act? No change or alteration tvas made in the act: a reference dr apostille was inserted in the margin and the Court cannot be ignorant that this wrought no effect on the act, could have none till “paraphed” or signed by the notary and. the parties. 1 Ferriere Diet. Verbo Apostille.
The Court views the reserve of a mortgage on Cuvillier’s estate, for such part of the notes as might not be paid, as at war with the spirit and the letter of the whole transaction. If I sell my land on credit, is a stipulations that in case of non payment the sale shall be rescinded, incongruous ? Does not the law supply such a clause ? If the law could supply it for the whole, may it not be stipulated for a part ? ■
Th e Court sees no evidence of this stipulation. Desse swears, that Cuvillier proposed it, as ope of the conditions of the transfer, and' Soulié told him he might consider the matter as concluded, ante 331. It is true, he informs us, on his cross-examination, that the terms were not discussed with Soulié : they had been with Cuvillier.
The release, granted to St. Amand,ds considered by the Court, as a departure from the *522 c0il®ac*> by which Brognier engaged to transfer his claim to the plaintiffs. He engaged to trails* ferhis claim against Cuvillier, and his mortgage on the land sold the latter and nothing else. See plaintiffs’ petition, ante 328. That St. Amand, Cuvillier’s father in law, was tobe relieved, clearly appears, from Desse’s deposition, from Soulié’s declaration to the notary, from Cuvillier’s conduct, who gathered and deposited part of the notes, with the knowledge that the release was one of the conditions, on the performance of which they Were to be handed over.
The petition states that the appellees severally agreed, to furnish their notes : there is nothing -from which a joint contract could bé implied and the right of every appellee must be examined distinctly and a part from the others ; surely that of Sou lié cannot in any point of view be recognis* ed by the Court : he stipulated certainly for him* self and he must be bound at all events.
If it were admitted that Blanque and Clarke, the other individuals who blotted out their names, did actually recede and had a right to do so, does it follow
Th at Villeré, who never expressed any dissa* fisfaetion or intention to complain, till long after Brognier had taken the notes, has any right to claim his ? Brognier transferred him his rights: he had accepted the transfer previously, and never appears tabavd receded.
*523 Marigny certainly cannot avail himself of Brognier having proposed a change in the deed, tyhen he has answered it did not appear to him it Could make the least difficulty.
What evidence of the dissent of the others was there at the time Brognier subscribed the. act?
By the Court. The Court, on the rehearing of this case, has given due attention to the arguments by which the counsel for the appellant endeavoured to support their objections to the judgment. ' .
The first ground on which they relied was, that J. Soulié,-one of the appellees, if not expressly authorised to stipulate for his co-subscribers, was impliedly so. The only circumstance, however, from which such implied power could be deduced, is that Soulié was entrusted by some of the subscribers with their notes, which were to be the consideration or price to be paid to the appellant Brognier, on his complying with • his part of the contract. But this Court is of opinion that, should Soulié have been the bearer .of all the notes, instead of some of them, yet ⅛ would noMrom thence follow that he was autho-rised to deliver them up, before the parties had finally agreed to the conditions of the contemplated contract; because nothing would have a more *524 <^anSeroius tendency, than this doctrine of implied authorisation and because the right of acting for, others and disposing of their property cannot be assumed, without an express and determinate power.
The second objection of the appellants to the, judgment of the Court is that the Court have overlooked several important matters of fact and particularly the stipulation, made by §oulie, that the notes' by him deposited in the hands of the notary should remain there, as a surety for the amount of the judicial mortgage afterwards released by Desse. On this point it did not, nor does it now, appear to the Court that the appellees had at all contemplated that the release of the judgment obtained against St, Amant should be one of the conditions of the intended contract, but on the contrary, it is, evident from the instrument drawn by the notary to which some of the appel-lees had affixed their signatures,, that the very reverse was the understanding of the parties ; for in that instrument, drafted conformably to the memorandum delivered by Cuviliier to, that offi--cer, it is positively expressed that upon one of the notes transferred by the appellant judgment had been obtained and execution issued, against Cuviliier and St. Amant.
The danger of the doctrine of implied autho-risation above spoken of is here made manifest ; *525 ibr the consent Niven by Soulié to the release ⅛ J . of this judgment and execution in favor of St. Amand is at war with the conditions as reduced to writing and as recognised by some of the ap-pellees. The Court, therefore, think that if the appellant Brognier suffers any prejudice in consequence of the release of the judgment obtained so by Desse against St. Amand, he has not to oomplam of any of the appellees, but Soulié.
The appellant next observes that the clause, added in the margin of the notarial instrument* to wit, a reservation of Brognier’s mortgage on Cuvillier’s property, for so much of the notes as should happen not -to be paid, was not an after thought, but made from the beginning a part of the stipulations agreed upon between Brognier’s agent and J. Soulié. The' Court have bestowed particular attention on the two depositions of that agent, the only witness who pretends to recollect any thing of that stipulation, and have found them so contradictory that they cannot give them much faith. In the first deposition, which is a recital, at one breath, of the whole transaction, he says indeed that after having treated with Cuvillier for. the conditions of that contract, mentioning among others the reservation of mortgage, he had some conversation on the subject with1 Soulié who told him he might consider the business as. concluded on the conditions above mentioned ; *526 ^ut: on ^e’n^ asked particularly whether he had discussed with Soulié the conditions of the con* tract, he answers categorically that he did not, Whatever sense may be attached by the appellants tQ tj^e word discussed, as employed in this case, it conveys to the mind of the Court the idea that Desse1 there confesses not to ,have entered into any minute explanation with Soulié, as to the particular stipulations of the contract* And when it is considered that he afterwards went with Cuvillier to the notary’s office, that there Cuvil-lier delivered to the notary the draught from which he was to make the instrument; and that neither in that draught nor in the instrument itself is to be found the clause of the reservation of mortgage, it may well be inferred that this clause was an after-thought, not perhaps as between Brognier and his agent, but as between Brognier and Desse and; Soulié. Indeed Desse himself on being asked, whether Brognier had not signified his intention to have a clause added in the margin of the instrument, plainly answers, that Brognier not considering his rights sufficiently secured in that instrument proposed to add a new clause to it. Supposing,, however, this clause to have been previously agreed upon between Desse and Soulié, the question recurs how does it appears that Soulié was authorised to consent to such reservation ? Is it not on the contrary very evident that the appellees under* *527 stood very differently, when we see the instrument prepared by the notary and signed by some of them containing an absolute and unconditional __ . transfer of Brogmer’s rights and mortgage on „ .... , ¾ C.uvmíer s property r
Finally, the appellant represents that although the principle of law be that where the parties have agreed to have the instrument of their contract reduced to writing before a notary, they have a right to recant before the instrument is closed and signed, yet that principle has its limitations, and that the present case is not one of those *© which it be may applied. In order to shew this, they have endeavoured to assimilate this to a real contract and pretended that in cases of real contracts the delivery of the thing makes the contract complete, so that the right of the parties to recant before signature is not applicable to contracts of this kind, but only to. contract called consensual, where nothing else than the consent of the parties is requisite to make them perfect. It would be idle here to examine whether the distinction insisted upon by the appellant be or be not correct, for the contract in the present case is a simple consensual contract, a naked contract of sale, in which the rights ofBrognier against Cu-villier are the thing gold, and the notes of the appellees and others are the price. It. instead of their notes, the appellees had deposited, in the hands *528 notary* the money which was to be the price of the thing brought* would the vfendor have had any riarht to take it, before , the act should have - ° . been closed and made complete by the signatures ajj the parlies ? Surely not and where is the difference ? The Court has not been able to discover any,
UpoN the whole, the Court is satisfied that the judgment rendered in this case, as it relates to the appellant Brognier, is founded in law and justice: but in as much as it appears that some of the notes claimed here, have been negotiated in good faith and have become the property of third persons, the Court think it necessary to modify their decree so as to relieve the other appellants from any responsibility. ,
It is, therefore, adjudged and decreed, that the /appellant Brognier do restore to the appellees the several notes by them subscribed in his favour, or, the amount of such of the said notes as it will not be in his power to surrender.
The City of Ñew-Orleans being besieged by a British army on the first Monday of January, J8L5, the Court was not opened.